No. 23-1694

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔦𝔯𝔰𝔱 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES, ex rel. Frederic P. Zotos;
COMMONWEALTH OF MASSACHUSETTS, ex rel. Frederic P. Zotos,
Plaintiffs - Appellants,

v.

TOWN OF HINGHAM; ROGER FERNANDES, individually and as former
Town Engineer; TOM MAYO, individually and as Town Administrator;
TED C. ALEXIADES, individually and as former Town Administrator, former
Town Accountant/Finance Director; KEVIN E. PAICOS, individually and as
former Town Administrator; SUSAN NICKERSON,
individually and as Town Accountant,
Defendants - Appellees.

On Appeal From The United States District Court
For The District Of Massachusetts

## APPELLEES' BRIEF

Kerry T. Ryan (Bar #121183)
ktr@b-dlaw.com
Bogle, DeAscentis & Coughlin
25 Foster Street, 1st Floor
Quincy, MA 02169
(617) 845-5473

Douglas I. Louison (Bar #57265)
dlouison@lccplaw.com
Joseph A. Padolsky (Bar #1153317)
jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
10 Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305

Dated: January 3, 2024

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................... ii

STATEMENT OF THE ISSUES .............................................1

STATEMENT OF FACTS ......................................................1

    A.    Prior Litigation. ................................................3

    B.    Current Litigation. ...........................................11

        1.    Mass. Gen. Laws Ch. 90 Reimbursements. ...............12

        2.    Federal-Aid Highway Program Reimbursements.....................15

SUMMARY OF THE ARGUMENT ......................................17

ARGUMENT ...........................................................................19

    A.    The District Court Correctly Determined That Mr. Zotos' Claims Fail Because The Defendants' Purported Misrepresentations Were Not Material. .............................19

    B.    The Defendants' Purported Misrepresentations Were Not In Fact False Or Fraudulent. ....................................22

    C.    The Defendants Did Not Knowingly Make, Use Or Cause To Be Made Or Used A False Record Or Statement Material To A False Or Fraudulent Claim; Nor Did They. ........................27

    D.    Mr. Zotos' Claims Are Barred By The Statutes Of Limitation. .........28

CONCLUSION......................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................31

CERTIFICATE OF SERVICE ...............................................32

i

# TABLE OF AUTHORITIES

**CASES:**

Belezos v. Bd. of Selectmen of Hingham,
  478 Mass. 1108, 102 N.E.3d 424 (Feb. 6, 2018) ........................................... 24, 26

Belezos v. Bd. of Selectmen of Hingham,
  2019 U.S. Dist. LEXIS 205938 (D. Mass. Nov. 27, 2019) ....................... 3, 25, 26

Belezos v. Board of Selectmen of Hingham,
  2017 Mass. App. Unpub. LEXIS 1005, 92 Mass. App. Ct. 1114
  (Mass. App. Ct. 2017) ................................................................................. 2, 24, 26

Belezos v. Bd. of Selectmen of Hingham,
  2020 U.S. App. LEXIS 21358 (1st Cir. 2020) ........................................................ 3

Commonwealth ex rel. Minarik v. Tresca Bros. Concrete, Sand & Gravel, Inc.,
  Nos. 145714, 1784CV02608-BLS2, 2021 Mass. Super. LEXIS 5
  (Jan. 25, 2021) ..................................................................................................... 20

Commonwealth v. Tresca Bros. Concrete, Sand & Gravel, Inc.,
  2023 Mass. Super. LEXIS 661 (Mass. Super. Nov. 28, 2023) ............................ 20

Hingham Police Dep't v. Zotos,
  2012 Mass. App. Unpub. LEXIS 693 (Mass. App. Ct. 2012) ............................... 3

Hingham Police Dep't v. Zotos,
  81 Mass. App. Ct. 1136, 966 N.E.2d 868 (May 16, 2012) .............................. 2, 22

Sever v. City of Salem,
  390 F. Supp. 3d 299 (D. Mass. 2019) ............................................................ 11, 25

Sever v. City of Salem,
  2020 U.S. App. LEXIS 6319 (1st Cir. 2020) ............................................. 3, 11, 25

United States ex rel. Booker v. Pfizer, Inc.,
  847 F.3d 52 (1st Cir. 2017) ................................................................................. 19

United States ex rel. Ge v. Takeda Pharm. Co. Ltd.,
  737 F.3d 116 (1st Cir. 2013) ............................................................................... 19

United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,
    360 F.3d 220 (1st Cir. 2004) ................................................................... 27

United States ex rel. Kelly v. Novartis Pharm. Corp.,
    827 F.3d 5 (1st Cir. 2016) ....................................................................... 27

United States ex rel. Kneepkins v. Gambro Healthcare, Inc.,
    115 F. Supp. 2d 35 (D. Mass. 2000) ................................................... 19-20

United States ex rel. Loughren v. Unum Grp.,
    613 F.3d 300 (1st Cir. 2010) ................................................................... 20

United States ex rel. Nargol v. DePuy Orthopaedics, Inc.,
    865 F.3d 29 (1st Cir. 2017) ..................................................................... 21

United States v. Rivera,
    55 F.3d 703 (1st Cir. 1995) ..................................................................... 28

Universal Health Servs. v. United States ex rel. Escobar,
    579 U.S. 176 (2016) ................................................................................ 21

Zotos v. Town of Hingham,
    2013 U.S. Dist. LEXIS 134123 (D. Mass. 2013) ............................... 23, 26

Zotos v. Town of Hingham,
    2016 U.S. Dist. LEXIS 195835 (D. Mass. 2016) ............................... 23, 26

**STATUTES:**

31 U.S.C.S. § 3729 ....................................................................................... 28
31 U.S.C.S. § 3731 ....................................................................................... 28
31 U.S.C.S. § 3730 ....................................................................................... 28

G.L. c. 12, § 5A ............................................................................................ 20
G.L. c. 12, § 5B(a) ....................................................................................... 20
G.L. c. 12, § 5K ............................................................................................ 28
G.L. c. 85, § 2 ............................................................................................... 14
G.L. c. 90 ............................................................................................... *passim*
G.L. c. 90, § 17 ........................................................................................... 4, 8

iii

G.L. c. 90, § 18.........................................................................................4, 11

G.L. c. 90, § 34......................................................................................... 12

**RULES:**

Fed. R. App. P. 42(b) ............................................................................... 3

Fed. R. Civ. P. 9(b) ................................................................................. 27

## STATEMENT OF THE ISSUES

Whether the District Court correctly decided the purported misrepresentations were not material under the Federal or Massachusetts False Claims Acts.

## STATEMENT OF FACTS

The case on appeal deals with Plaintiff Frederic P. Zotos' fifth and latest challenge to the speed limit signs posted in the Town of Hingham. In this action filed *pro se* by Mr. Zotos', as relator to the United States and Commonwealth of Massachusetts, he claims that the Defendants have violated the Federal and Massachusetts False Claims Acts by posting certain speed limit signs posted in the Town of Hingham *ultra vires* thereby falsely certifying its current and continuing compliance with "all legal requirements governing the performance of this Contract" and "with all applicable state laws and regulations." Mr. Zotos' claims were rejected by the District Court on the grounds that even if the Defendants posted unauthorized speed limit signs *and* that such misconduct was within the scope of the certifications at issue, the purported misrepresentations were not material under the Federal or Massachusetts False Claims Acts. The District Court's materiality findings and ultimate conclusions were correct. In addition, the District Court could have dismissed the case on additional grounds stemming from the multiple prior court decisions relating to these same allegations. Mr. Zotos'

*ultra vires* speed signs claim has been brought several times before and it has been consistently and definitively rejected.

Mr. Zotos was a *pro se* plaintiff in two previous actions challenging the legitimacy of the Town of Hingham's speed signs. He also brought two other actions challenging the legitimacy of the Town of Hingham's speed signs as counsel to Nicholas Belezos.

Both of Mr. Zotos' prior *pro se* matters were dismissed pursuant to Rule 12(b)(6). Mr. Zotos appealed one of the dismissal decisions and it was affirmed by this Court in <u>Zotos v. Town of Hingham</u>, et al., No. 13-2308 (February 18, 2015). Mr. Zotos also raised *ultra vires* challenges to the legitimacy of Town of Hingham's speed signs in two Chapter 90 civil motor vehicle infraction appeals which were reviewed by the Massachusetts Appeals Court and which were also decided against him. <u>See</u> <u>Hingham Police Dep't v. Zotos</u>, 2012 Mass. App. Unpub. LEXIS 693, 81 Mass. App. Ct. 1136, 966 N.E.2d 868 (May 16, 2012).

As counsel, Mr. Zotos filed <u>Belezos v. Board of Selectmen of the Town of Hingham</u>, in the Massachusetts Superior Court for Plymouth County, raising the same challenges to the legitimacy of the speed signs. <u>Belezos v. Board of Selectmen of Hingham</u>, 2017 Mass. App. Unpub. LEXIS 1005, at *3-4, 92 Mass. App. Ct. 1114 (Mass. App. Ct. 2017). When Mr. Zotos was unsuccessful in prosecuting Mr. Belezos' claims in state court he filed the same action on behalf of

2

Mr. Belezos in federal court, which dismissed his re-filed claims on preclusion grounds.  Belezos v. Bd. of Selectmen of Hingham, 2019 U.S. Dist. LEXIS 205938 (D. Mass. Nov. 27, 2019).  He appealed that decision to this Court but voluntarily dismissed the appeal pursuant to Fed. R. App. P. 42(b), after this Court's decision in the Sever v. City of Salem, infra, matter.  Belezos v. Bd. of Selectmen of Hingham, 2020 U.S. App. LEXIS 21358 (1st Cir. 2020).

As indicated, Mr. Zotos also filed a substantially similar action involving challenges to speed signs posted by the City of Salem which too was dismissed under Rule 12(b)(6) and which dismissal was affirmed by this Court.  Sever v. City of Salem, 2020 U.S. App. LEXIS 6319, *1 (1st Cir. 2020)("Counsel for Plaintiff-Appellant is admonished not to continue to bring meritless federal litigation. The federal claims are dismissed with prejudice.")[1].

## A.    Prior Litigation

On June 25, 2009 and December 2, 2010, Mr. Zotos received civil motor vehicle infractions for driving 50 M.P.H. in a 30 M.P.H. zone.  See Hingham Police Dep't v. Zotos, 2012 Mass. App. Unpub. LEXIS 693, *4 (Mass. App. Ct. 2012).  He challenged those infractions through the administrative process set forth in Mass. Gen. Laws Ch. 90 ("Chapter 90") and, in doing so, argued that the speed

---

[1] Given the multiple filings by plaintiff on these same issues, all of which have been rejected by the courts, a similar admonition in this case would seem appropriate.

3

signs he was cited with violating were posted *ultra vires* because the Town did not follow the procedure envisioned by G.L. c. 90, § 18.  The Massachusetts Appeals Court disagreed and, otherwise, found that Mr. Zotos was either in violation of G.L. c. 90, §§ 17 or 18, but in either case that he was in violation of the speed laws. Contrary to Mr. Zotos' theory, the speed signs were not "special" regulations because, as the Appeals Court determined, the speed on the roadway was 30 M.P.H. whether posted or not, thus, the signs were consistent with the statutory directive.  Id.

This was the starting point of Mr. Zotos' many federal and state challenges to the Town of Hingham's speed signs. Mr. Zotos first brought his claims in the federal District Court in the matter of Zotos v. Town of Hingham, et al., 1:12-cv-11126 in July of 2012 (hereinafter referred to as "Zotos I").  (Zotos I Complaint, July 9, 2012; District Court Docket # 25-1).  There the District Court addressed the insufficiency of Mr. Zotos' pleadings and in a thorough and well-reasoned decision determined that none of the claims could withstand a Rule 12(b)(6) motion to dismiss.  (Zotos I Decision, September 19, 2013; District Court Docket # 25-2). Mr. Zotos appealed to this Court which affirmed the dismissal.  (First Circuit Decision, February 18, 2015; District Court Docket # 25-3).

During the pendency of the Zotos I appeal to this Court, Mr. Zotos filed a nearly identical Complaint with the District Court thereby commencing a second

4

matter ("Zotos II") premised upon the same facts but different theories of law.

(Zotos Amended Complaint, August 3, 2015; District Court Docket # 25-4). In a

second thorough and well-reasoned decision, the District Court again determined

that none of the claims could withstand a Rule 12(b)(6) motion to dismiss. (Zotos

II Decision, March 25, 2016; District Court Docket # 25-5). Importantly, in the

second decision, District Judge Denise J. Casper ruled:

> In Counts XII, XIII, XIV and XV, Zotos adds *ultra vires* claims. D. 18
> ¶¶ 152-163. Zotos alleges that Defendants acted *ultra vires* because
> Defendants erected and enforced special speeding regulations pursuant to
> Mass. Gen. L. c. 90, § 18 without complying with section 18's requirements.
> Id. An officer "may be said to act *ultra vires* only when he acts without any
> authority whatever." New Hampshire Ins. Guar. Ass'n v. Markem Corp.,
> 424 Mass. 344, 353 (1997) (internal quotation marks omitted) (quoting
> Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984));
> cf. Entergy Nuclear Generation Co. v. Dep't of Envtl. Prot., 459 Mass. 319,
> 332 (2011) (explaining that agency's actions were not ultra vires because
> the authority to take those actions was implied by the governing statute). Only a
> procedure that has "no authority" in the relevant statutes, considering both
> the authority expressly and impliedly granted, is ultra vires. Morey v.
> Martha's Vineyard Comm'n, 409 Mass. 813, 818 (1991). Thus, for this
> claim to survive, Zotos must plausibly allege that Defendants' conduct was
> without any authority whatever. Mass. Gen. L. c. 90, § 17 and 18 both
> pertain to motor vehicle speed limits. Pursuant to section 17, "[n]o person
> operating a motor vehicle on any way shall run it at a rate of speed greater
> than is reasonable and proper." Furthermore, "[u]nless a way is otherwise
> posted in accordance with the provisions of section eighteen, it shall be
> prima facie evidence of a rate of speed greater than is reasonable and
> proper... if a motor vehicle is operated... inside a thickly settled or business
> district at a rate of speed exceeding thirty miles per hour." Mass. Gen. L.
> c. 90, § 17. Sections 17 and 18 must be read harmoniously." Police Dep't of
> Hingham, 81 Mass. App. Ct. at *1. Accordingly, section 18 "permits the
> imposition of a different speed limit so long as certain procedures are
> followed." Id. In other words, "Section 17 sets forth the basic law [while]

5

section 18 allows modifications to it." <u>Id.</u> Even "if a speed limit is posted in violation of [section] 18, [section] 17 controls." <u>Id.</u>

Zotos concedes that he received his speeding citations for violating speed limits of thirty miles per hour. D. 18-4; D. 18-9; D. 18-15. As the Appeals Court of Massachusetts concluded and Zotos has not disputed, "it appears that [Zotos] was traveling in an area identified as a 'thickly settled area,' in which [section 17] limits speeds to thirty miles per hour." <u>Police Dept of Hingham</u>, 81 Mass. App. Ct. at *2. Consequently, even if Defendants did not satisfy the requirements of section 18, Defendants' conduct was not ultra vires because authority to post and enforce "a reasonable and proper" speed limit is granted by section 17.

Without pointing to any supportive authority, Zotos argues that, because the speed limits at issue were posted, they must be treated as special speed limits pursuant to section 18. D. 21 at 17. In Zotos' view, "'general speed regulations' set forth by [section § 17] are all unposted speed limits." <u>Id.</u> The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." <u>Police Dep't of Hingham</u>, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the speed limits signs at issue were outside of the reach of section 17 and its "reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. Therefore the *ultra vires* claims fail.

(<u>Zotos II</u> Decision, March 25, 2016; District Court Docket # 25-5).

While <u>Zotos II</u> was pending, this time acting as counsel to a client, Mr.

Zotos filed another substantially identical action challenging the legitimacy of the

speed signs in the Town of Hingham in Plymouth Superior Court (hereinafter

referred to as "Belezos I").  (See Belezos v. Town of Hingham Amended

Complaint; District Court Docket # 25-6).  Deciding a motion for judgment on the

pleadings, Massachusetts Superior Court Judge Christopher Muse found the

following:

> Defendants correctly argue that the claims raised in the First Amended
> Complaint are substantially those raised by Plaintiffs Attorney Frederic
> Zotos, in a personal action he previously filed in the U. S. District Court, and
> citing to the well-reasoned opinion of the District Court Judge, urges this
> court to dismiss their complaints for the same reasons. Defendants presented
> a chart of the comparable Zotos complaints, (Zotos I and Zotos II) to
> establish the identity of those claims for purposes of comparison to
> Belezos's claims. The court attaches this chart and notes that only Count
> XVI (conversion) is a claim separate from the Zotos' federal actions.

> Now, to the issue that Attorney Zotos raised on his own behalf from the
> moment of receiving a speeding ticket from a Hingham police officer on
> Gardner street on December 2, 2010.

> Zotos challenged the authority of the Town of Hingham to post the 30 mph
> sign, and the right of the officer to cite him for its violation. His journey of
> vindication took him first to the Hingham District court before a clerk
> magistrate, then to judge of that court, followed by an appeal to the
> Appellate Division of the District Court, then again to the Massachusetts
> Court of Appeals, followed by an action before a Magistrate of the Federal
> District court, a subsequent appeal to the First Circuit Court of Appeals, and
> finally, before a judge of the Federal Court. In each instance the court
> proceeding was resolved against Zotos and in favor of the Town.
> **The core issue raised again by Zotos, now on behalf of Belezos, is: Did**
> **Hingham have the right to install that sign, and did the Hingham police**
> **have the authority to enforce a speed limit on Gardner St? For the**
> **benefit of Belezos and for posterity, the court shall echo the historic**

findings made earlier against Zotos, and now states without equivocation, "Yes, they did."[2]

G.L. c. 90, § 17 states as follows:

" ... If a speed limit has been duly established upon any way, in accordance with the provisions of said section, operation of a motor vehicle at a rate of speed in excess of such limit shall be prima facie evidence that such speed is greater than is reasonable and proper ... ".

A reading of the statute clearly authorizes a municipality to establish zones in which certain speeds have been deemed reasonable by the Legislature. The provisions of said section noted above, identify several speed restrictions based on the density of the population near the roadways. For example, and applicable to this case, "inside a thickly settled or business district" a sign of thirty miles per hour may be posted.

Federal District Court Judge Casper reviewed this statute and found against Zotos as follows:

The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." Police Dep't of Hingham, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the speed limits signs at issue were outside of the reach of section 17 and its

---

[2] Emphasis added for reasons relating to Mr. Zotos' current claim that the Defendants knew their certifications were false, despite the fact that the Plymouth County Superior Court opined that the signs were posted with authority.

"reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. Therefore the ultra vires claims fail.

> **Independent of this decision, but giving persuasive effect to her well reasoned holding, this court adopts Judge Casper's finding, and concludes, once again that Hingham had the statutory right to install that sign, and the Hingham police had the authority to enforce its designated speed limits.[3]**

(See Belezos v. Town of Hingham MJOP Decision; District Court Docket # 25-7) (emphasis added). The Massachusetts Appeals Court affirmed the Judgment.

(Belezos v. Town of Hingham MAC Decision; District Court Docket # 25-8).

Following the Appeals Court's decision affirming the Plymouth County Superior Court's Judgment, again on behalf of his client Nicholas G. Belezos, Mr. Zotos filed yet another substantially identical action challenging the legitimacy of the posted speed limit signs, in the federal District Court. (See Belezos v. Board of Selectmen, 1:17-cv-12570-FDS Amended Complaint; District Court Docket # 25-9)("Belezos II"). Magistrate Judge Marianne Bowler dismissed Belezos II and in doing so stated the following:

> Here, as repeatedly and consistently reiterated by defendants, plaintiff's state court litigation regarding the speed limit sign on Gardner Street compelled them to defend against the hard-fought litigation that plaintiff pursued in the state trial court, the MAC, and the SJC. (Docket Entry ## 8-7, 8-8, 8-9, 15-1, 25-4). The merits of the litigation did not favor plaintiff in light of his counsel's repeatedly-unsuccessful attempts in state and federal court to obtain relief related to his own speeding ticket on Gardner Street. (Docket Entry ## 8-1 to 8-5, 25-3). Claim preclusion will relieve the further cost and vexation to defendants of extending this already extensively litigated matter

---

[3] See footnote 2.

and conserve additional judicial resources devoted to this case at the expense of other cases. In addition, federalism and comity caution against a federal court interfering and essentially overlooking or overturning a state court decision (Docket Entry # 8-8) that applies a state statute to bar plaintiff from further challenges in this matter because he failed to avail himself of the opportunities initially provided in chapter 90C. Allowing the claims in this case, which comprise substantially the same claims against the same defendants that the MAC precluded in Belezos (Docket Entry ## 8-8, 11, 15-1), to go forward goes directly against the premise of the MAC's decision, which the MAC considered final. (Docket Entry # 8-8, p. 4) (quoting chapter 90C, section three, that payment of assessment "'shall operate as a final disposition'") (emphasis added).

…

The MAC's decision [in <u>Belezos I</u>] therefore deemed the assertions or claims regarding the erection and enforcement of the unauthorized speed limit signs encompassed within the waiver. Furthermore, the MAC affirmed the judgment of the trial court, which dismissed the state statutory claims as well as the federal constitutional claims. If the MAC passed over the erection and illegal enforcement of the speed limit signage assertions, as plaintiff suggests, the MAC would not have affirmed the judgment dismissing all of the claims. Simply put, the MAC did not pass over them. In any event, the trial court considered the issues regarding the unauthorized speed limit signs and made necessary findings regarding them to support the final judgment. As previously explained, the trial court did not render alternative findings and the MAC did not affirm the judgment based on one of two alternative grounds. (Docket Entry # 22, p. 28).

(<u>See</u> <u>Belezos v. Board of Selectmen</u>, 1:17-cv-12570-MBB Decision; District Court

Docket # 25-10).

At the same time, acting as counsel to a client, Mr. Zotos filed <u>Sever v. City of Salem</u>, in the District Court against the City of Salem based on his same theory – that the City of Salem's posting of speed control signs violated the provisions of

M.G.L. c. 90, § 18 and other regulations, and therefore were *ultra vires,* illegal and unenforceable.  Sever v. City of Salem, 390 F. Supp. 3d 299 (D. Mass. 2019). Judge Bowler found that Mr. Sever failed to allege a legally cognizable injury and dismissed his case for lack of standing.  Id.  On appeal, this Court affirmed the judgment of the District Court and cautioned Mr. Zotos from continuing to bring meritless federal litigation.  Sever v. City of Salem, 2020 U.S. App. LEXIS 6319, *2 (1st Cir. 2020).

### B.    Current Litigation

Mr. Zotos has brought this latest case ("Zotos III") as a relator to the United States and Commonwealth of Massachusetts.  He brought the case against the Town of Hingham, Roger Fernandes individually and as former Town Engineer, Thomas Mayo individually and as Town Administrator, Ted Alexiades individually and as former Town Accountant/Finance Director and Town Administrator, Kevin Paicos individually and as former Town Administrator, and Susan Nickerson individually and as Town Accountant.[4]  (Add. to Appellant's Brief at p. 28; see also Joint Appendix at pp. 12-14)

---

[4] Ms. Nickerson has recently left her Town Accountant job with the Town of Hingham.

Zotos III is premised upon the same *ultra vires* claims he has made over the course of the many years and previous iterations of his speed sign litigation. (See Add. to Appellant's Brief at pp. 28-29; see also Joint Appendix at pp. 14-29).

Mr. Zotos' latest iteration grafts an additional layer to his claims against the Defendants. Here, Mr. Zotos seeks to connect his *ultra vires* theory, despite its repeated rejection, with certain funds provided by the federal government and/or the Commonwealth as part of highway and transportation aid programs. Mr. Zotos' claims fail for reasons related to the prior litigation matters and on their own independent lack of merit.

### 1. MASS. GEN. LAWS CH. 90 REIMBURSEMENTS

The Commonwealth of Massachusetts ("the Commonwealth") provides funding for local transportation projects pursuant to M.G.L. ch. 90, § 34 ("Chapter 90"). Under Chapter 90, the Commonwealth reimburses municipalities and other qualifying entities for up to 100% of the cost of approved projects. (Add. to Appellant's Brief at pp. 30-32; see also Joint Appendix at pp. 35-53).

Mr. Zotos contends that the Town, in connection with a variety of Chapter 90 projects, entered into two contracts with the Commonwealth, submitted 24 separate Chapter 90 Reimbursement Forms to the District Office of the MassDOT's Highway Division and submitted several Chapter 90 Final Reports. The complaint identifies certifications included in those contracts and

reimbursement forms which defendants signed despite their alleged failure to comply with regulations pertaining to speed limit signs.  (Id.).

For instance, in 2007, the Town entered into a ten-year contract with the Massachusetts Highway Department related to its work on Chapter 90 projects in which it certified its current and continuing compliance with "all legal requirements governing performance of this Contract." In 2017, the Town executed a replacement contract in which it again certified that it would "comply with all applicable state laws and regulations."  (Id.).

Throughout the time period covered by those contracts, Defendants submitted two dozen Chapter 90 Reimbursement Forms to the District Office of the MassDOT Highway Division.  (Id.). Those reimbursement requests documented the Town's qualifying expenditures on previously approved Chapter 90 projects. The requests also contained several certifications, namely: 1) a Municipal Highway Officer's Certification stating that costs were incurred "in conformance with the Massachusetts Highway Department Policies", 2) an Accounting Officer's Certification that the forms submitted by the Town conformed with "all applicable statutes and regulations" and 3) a Duly Authorized Municipal Official's Certification certifying the same.  (Id.).

Finally, the Town submitted multiple Chapter 90 Final Reports that each included a joint certification by the Municipal Highway Officer, Accounting

Officer and Duly Authorized Municipal Official "that the Municipality has complied with all applicable statutes and regulations" while incurring the project costs for which it sought reimbursement. (Id.).

On July 12, 2012, Mr. Zotos sent a letter to Richard M. Davey, Secretary of Transportation and Chief Executive Officer, MassDOT entitled "Regulatory Investigation and Enforcement Request" in which he alleged that the speed signs in the Town of Hingham were posted ultra vires. (Compl. at ¶ 127; Joint Appendix at p. 74). His request was denied on July 13, 2012 by Rachel Rollins, then General Counsel of MassDOT. (Compl. at ¶ 128; Joint Appendix at p. 75). Further, Mr. Zotos cites G.L. c. 85, § 2 on page 10 of his Complaint and alleges that MassDOT shall withhold or withdraw the unexpended balance of any funds assigned to the Town under the provisions of section thirty-four of chapter ninety. (Compl. at ¶ 26; Joint Appendix at p. 17). Not only did this Court and the Massachusetts Trial and Appeals Courts reject Mr. Zotos' claims, so did MassDOT. Chapter 90 funds were not withheld or withdrawn despite Plaintiff's repeat letters to MassDOT. (Appellant Brief at p. 4; Addendum to Appellant's Brief at pp. 41).

Zotos requested that, inter alia, the MassDOT withhold or withdraw funds provided to the Town under Chapter 90 because it had posted unauthorized speed limit signs. He also asked that the MassDOT dispatch personnel to Hingham to take down those signs. After the MassDOT rejected his request through its General

14

Counsel, Mr. Zotos wrote a second letter to the MassDOT stating that he thought its response was inadequate.  (Addendum to Appellant's Brief at pp. 16-20).

According to the complaint, defendants have fraudulently induced the Commonwealth to pay about $7.3 million of Chapter 90 funds to the Town by submitting reimbursement requests containing false representations about their regulatory compliance.  (Joint Appendix at p. 9).

### 2. FEDERAL-AID HIGHWAY PROGRAM REIMBURSEMENTS

Mr. Zotos also avers that defendants caused the Commonwealth to submit false claims to the Federal Highway Administration ("FHWA") with respect to projects administered under the Federal-Aid Highway Program ("FAHP"). According to the complaint, the federal government typically reimburses states for FAHP projects as follows: 1) the FHWA notifies states about the balance of available funds; 2) states make formal requests and begin projects (e.g. by engaging various contractors to work on those projects); 3) contractors work on the approved projects and bill the states; 4) states, having incurred the cost of paying such bills, send vouchers for payment to the FHWA; and 5) the FHWA certifies those claims and submits them to the Treasury which disburses funds to the state. (Add. to Appellant's Brief at pp. 32-34).

Mr. Zotos claims that states now submit vouchers for payment electronically through the Rapid Approval and State Payment System ("RASPS") which replaced

a "legacy" system that used a specific form, FHWA Form PR-20. He submits that Form PR-20 included a certification, to be signed by an authorized official of the state highway agency, stating that:

> [c]ost [sic] shown in this voucher have been incurred in accordance with terms of project agreements; applicable State and Federal laws or regulations; and that no claim has previously been submitted for costs claimed.

(Id.).

The complaint describes two FAHP projects that began in Hingham in 2018. MassDOT/Federal-Aid Project No. 600518 was scheduled to begin in 2018 and be completed by 2020 ("Project No. 600518"). It was intended to improve several intersections, install a new traffic signal system and make other improvements for drivers, bicyclists and pedestrians. MassDOT purportedly submitted 19 invoices, including 76 vouchers for payment, via RASPS for work done in connection with the project and received about $425,000 in funds from the federal government. (Id.).

MassDOT/Federal-Aid Project No. 607309 was also scheduled to begin in 2018 and be completed by 2020 ("Project No. 607309" and, collectively with Project No. 600518, "the 2018 Hingham projects"). It was designed to address safety and capacity issues at ramps by introducing additional traffic signals and making other improvements. MassDOT is alleged to have submitted 45 invoices, including 221 vouchers for payment, via RASPS for work done in connection with

the project and received about $2,885,000 in funds from the federal government. (Id.).

In total, therefore, the complaint alleges that the MassDOT submitted, and received payment for, about $3.3 million in claims to the federal government for the 2018 Hingham projects.  (Id.).

## SUMMARY OF THE ARGUMENT

The District Court granted the Town of Hingham, Roger Fernandes, Thomas Mayo, Ted Alexiades, Kevin Paicos and Susan Nickerson's ("Defendants") Rule 12 motion to dismiss.  The District Court's decision to dismiss Mr. Zotos' claims on the merits was correct.  However, dismissal would have also been warranted on several other grounds.

The District Court determined Mr. Zotos' claims failed because the Defendants' purported misrepresentations were not material.  In rendering this conclusion the District Court assumed for the sake of argument that the Defendants posted unauthorized speed limit signs and that such misconduct was within the scope of the certifications at issue.  Even with these assumptions, the District Court found that materiality was lacking.  Defendants certainly agree that materiality was lacking and that it is fatal to Mr. Zotos' claims in this case.

Contrary to the District Court's res judicata conclusion, the prior cases apply to bar relitigation of Mr. Zotos' *ultra vires* claims in this case.  In Zotos I, Zotos II,

17

Belezos I, and Belezos II, Mr. Zotos alleged that the speed signs at issue were posted *ultra vires* and in each case the courts decided that they were not. The District Court declined to apply claim preclusion on the basis that the United States and the Commonwealth were not parties to the prior actions. (Add. to Appellant's Brief at p. 36). However, the District Court, Massachusetts Superior Court, Appeals Court, and this Court have all previously rejected Mr. Zotos' claim that the speed signs were posted *ultra vires*, issuing decisions that apply squarely to debunk Mr. Zotos' false certifications claim. This litigation is a fifth iteration of the same rejected theory, with Mr. Zotos' complaint assuming the exact opposite legal conclusion to those drawn by every court in every prior iteration of this case. It has already been determined several times, the speed signs were not posted or maintained *ultra vires*. The previous decisions are also dispositive of the first and second prong of the FFCA and MFCA merits analysis.

The rulings in each of the prior cases undermine Mr. Zotos' assertion as to the falsity of the claim to compliance with all legal requirements or applicable state laws and regulations.

Thus, Mr. Zotos' FFCA and MFCA claims fail on all three elements of proof. The Defendants did not (1) knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval; (2) knowingly make, use or

cause to be made or used a false record or statement material to a false or fraudulent claim; nor did they (3) conspire to commit a violation of either Act.

Further, to the extent that the Court reaches this issue, each of Mr. Zotos' claims prior to September 24, 2013 were untimely.

## ARGUMENT

### A. The District Court Correctly Determined That Mr. Zotos' Claims Fail Because The Defendants' Purported Misrepresentations Were Not Material.

Mr. Zotos' claims do not fall within the scope of either False Claims Act. "[M]erely alleging facts related to a defendant's alleged misconduct is not enough. ... Rather, a [Federal FCA complaint] must 'sufficiently establish that false claims were submitted for government payment' as a result of defendant's alleged misconduct.'" United States ex rel. Ge v. Takeda Pharm. Co. Ltd., 737 F.3d 116, 124 (1st Cir. 2013) (quoting Rost, 507 F.3d at 732-33); see United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52, 57 (1st Cir. 2017) ("That is, even when a relator can prove that a defendant engaged in 'fraudulent conduct affecting the government, FCA liability attaches only if that conduct resulted in the filing of a false claim for payment from the government.'" (quoting Rost, 507 F.3d at 727)). FCA claims typically arise in the context of a scheme to defraud the government. See e.g. United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 37 (D. Mass. 2000)(alleged that defendants performed unnecessary and

wasteful blood tests for purposes of submitting Medicare reimbursements in violation of the False Claims Act).

The Massachusetts FCA imposes liability upon "[a]ny person who (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (2) knowingly makes, uses or causes to be made or used a false record or statement material to a false or fraudulent claim." G.L. c. 12, § 5B(a). The word "claim" is defined to include a request for payment to a contractor, if the payment will advance a program or interest of, and ultimately come in whole or in part from, the Commonwealth or a political subdivision. G.L. c. 12, § 5A.  In § 5B(a), the word "knowingly" modifies all that follows.

The MFCA similarly contains a materiality requirement.  <u>Commonwealth ex rel. Minarik v. Tresca Bros. Concrete, Sand & Gravel, Inc.</u>, Nos. 145714, 1784CV02608-BLS2, 2021 Mass. Super. LEXIS 5, at *6 (Jan. 25, 2021).  The statute defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." G.L. c. 12, § 5A; cf. <u>United States ex rel. Loughren v. Unum Grp.</u>, 613 F.3d 300, 307 (1st Cir. 2010) (same under FFCA).[5]

---

[5]  The Massachusetts courts have recently decided a MFCA claim on the issue of knowledge of falsity and materiality. <u>See</u> <u>Commonwealth v. Tresca Bros. Concrete, Sand & Gravel, Inc.</u>, 2023 Mass. Super. LEXIS 661, *6 (Mass. Super. Nov. 28, 2023) ("If the government knows and approves of the particulars of a claim for payment before that claim is presented," then "the presenter cannot be

"The FCA's 'materiality standard is demanding.'" <u>United States ex rel. Nargol v. DePuy Orthopaedics, Inc.</u>, 865 F.3d 29, 34 (1st Cir. 2017), <u>quoting</u> <u>Universal Health Servs. v. United States ex rel. Escobar</u>, 579 U.S. 176, 194 (2016) ("<u>Escobar</u>").

"A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." <u>Escobar</u>, 579 U.S. at 194.

One way to prove materiality would be to show "that the Government consistently refuses to pay claims in the mine run of [ordinary] cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." <u>Id.</u> at 195.

---

said to have knowingly presented a fraudulent or false claim. In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA."). All courts in which Mr. Zotos has presented his *ultra vires* speed sign theory have rejected it. That aside, the pleadings record of this case shows that in 2012 Mr. Zotos notified the government of his alleged *ultra vires* speed sign theory and the improvement funding was still provided. On the issue of materiality, citing <u>Escobar</u>, the court stated: "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is [also] strong evidence that the requirements are not material." <u>Id.</u> This too applies to defeat Mr. Zoto's claims.

The reverse is also true. "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." Id. Similarly, "if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is [also] strong evidence that the requirements are not material." Id.

Here, Mr. Zotos specifically included within the allegations of his complaint the fact that he notified the Government of his *ultra vires* claims about the Town's speed signs *and* that Chapter 90 funds were not withheld or withdrawn despite his repeat letters to MassDOT.  (Appellant Brief at p. 4; Addendum to Appellant's Brief at pp. 16-20, 41).  This alone is dispositive of Mr. Zotos' claims.

**B.    The Defendants' Purported Misrepresentations Were Not In Fact False Or Fraudulent.**

Beyond Mr. Zotos' communications with MassDOT and the continued funding of Town roadway projects, however, are the multiple court opinions with conclusions to the exact contrary of those asserted by Mr. Zotos.  To wit:

In Mr. Zotos' Chapter 90 appeals he claimed that the speed limit sign had been erected "*ultra vires*, and was therefore legally unenforceable."  His theory was rejected.  Hingham Police Dep't v. Zotos, 2012 Mass. App. Unpub. LEXIS 693, 81 Mass. App. Ct. 1136, 966 N.E.2d 868 (May 16, 2012).

In <u>Zotos I</u>, the District Court rejected Mr. Zotos claims that the speed signs were fraudulent or even negligent misrepresentations.  <u>Zotos v. Town of Hingham</u>, 2013 U.S. Dist. LEXIS 134123 (D. Mass. 2013).

In <u>Zotos II</u>, the District Court ruled:

**[E]ven if Defendants did not satisfy the requirements of section 18, Defendants' conduct was not *ultra vires* because authority to post and enforce "a reasonable and proper" speed limit is granted by section 17.**

Without pointing to any supportive authority, Zotos argues that, because the speed limits at issue were posted, they must be treated as special speed limits pursuant to section 18. D. 21 at 17. In Zotos' view, "'general speed regulations' set forth by [section § 17] are all unposted speed limits." <u>Id.</u> The Court finds no language in section 17 that automatically places a speed limit outside of section 17's purview and renders it subject to section 18's special requirements merely because a public sign has been posted. To the contrary, in section 17 the language "[u]nless a way is otherwise posted in accordance with the provisions of section eighteen," particularly the use of "otherwise," indicates that section 18 is not the exclusive authority for posted speed limits. Mass. Gen. L. c. 90, § 17. Moreover, the fact that the citations may have listed section 18 is not determinative because "[Zotos] suffered no prejudice" given that "[r]egardless of the section checked, whether § 17 or § 18, the Commonwealth had the same burden of proof, to wit, proving operation of the car in excess of that which was reasonable and proper." <u>Police Dep't of Hingham</u>, 81 Mass. App. Ct. at *2. Because Zotos has failed to present a plausible basis upon which to conclude that the speed limits signs at issue were outside of the reach of section 17 and its "reasonable and proper" standard, Zotos has failed to allege that Defendants' conduct was ultra vires. **Therefore the ultra vires claims fail.**

<u>Zotos v. Town of Hingham</u>, 2016 U.S. Dist. LEXIS 195835 (D. Mass. 2016).

23

In <u>Belezos I</u>, the Massachusetts Superior Court ruled:

> **The core issue raised again by Zotos, now on behalf of Belezos, is: Did Hingham have the right to install that sign, and did the Hingham police have the authority to enforce a speed limit on Gardner St? For the benefit of Belezos and for posterity, the court shall echo the historic findings made earlier against Zotos, and now states without equivocation, "Yes, they did."**
>
> **…**
>
> **Independent of this decision, but giving persuasive effect to her well reasoned holding, this court adopts Judge Casper's finding, and concludes, once again that Hingham had the statutory right to install that sign, and the Hingham police had the authority to enforce its designated speed limits.**

(See <u>Belezos v. Town of Hingham</u> MJOP Decision; District Court Docket # 25-7). The Massachusetts Appeals Court affirmed.  <u>Belezos v. Bd. of Selectmen of Hingham</u>, 2017 Mass. App. Unpub. LEXIS 1005, 92 Mass. App. Ct. 1114 (Nov. 14, 2017).  Mr. Zotos petitioned the Supreme Judicial Court for further appellate review which denied his petition.  <u>Belezos v. Bd. of Selectmen of Hingham</u>, 478 Mass. 1108, 2018 Mass. LEXIS 54, 102 N.E.3d 424 (Feb. 6, 2018).

Mr. Zotos attempted to re-file Mr. Belezos' case in the District Court, claiming the Massachusetts Appeals Court did not affirm the legal conclusions rendered by the Superior Court thereby permitting him the right to proceed with the same action in federal court. Judge Bowler rejected Mr. Zotos' argument stating:

> The MAC's decision [in <u>Belezos I</u>] therefore deemed the assertions or claims regarding the erection and enforcement of the unauthorized speed

limit signs encompassed within the waiver. Furthermore, the MAC affirmed the judgment of the trial court, which dismissed the state statutory claims as well as the federal constitutional claims. **If the MAC passed over the erection and illegal enforcement of the speed limit signage assertions, as plaintiff suggests, the MAC would not have affirmed the judgment dismissing all of the claims. Simply put, the MAC did not pass over them.**

In any event, the trial court considered the issues regarding the unauthorized speed limit signs and made necessary findings regarding them to support the final judgment. As previously explained, the trial court did not render alternative findings and the MAC did not affirm the judgment based on one of two alternative grounds.

Belezos v. Bd. of Selectmen of Hingham, 2019 U.S. Dist. LEXIS 205938, *14 (D.

Mass. Nov. 27, 2019) (emphasis added). Mr. Zotos appealed this decision to this

Court but voluntarily dismissed the appeal after this Court cautioned him in Sever,

supra.

Thus, beyond the fact of Mr. Zotos' 2012 letters to MassDOT, each and

every court in which Mr. Zotos presented his *ultra vires* theory rejected his theory.

Courts of the Commonwealth, the District of Massachusetts, and this Court have

specifically opined that the Town did not act beyond its legal power or authority

with regard to the posting or enforcement of speed signs. Thus, Mr. Zotos' claim

that the Defendants knowingly acted *ultra vires* and therefore falsely certified that

it was compliant with "all legal requirements governing performance of this

Contract" or "with all applicable state laws and regulations" is simply not accurate.

The Defendants did have authority to post and enforce the speed signs.  See Belezos v. Town of Hingham MJOP Decision; District Court Docket # 25-7 affirmed by Belezos v. Bd. of Selectmen of Hingham, 2017 Mass. App. Unpub. LEXIS 1005, 92 Mass. App. Ct. 1114 (Nov. 14, 2017) further review denied Belezos v. Bd. of Selectmen of Hingham, 478 Mass. 1108, 2018 Mass. LEXIS 54, 102 N.E.3d 424 (Feb. 6, 2018); see also Belezos v. Bd. of Selectmen of Hingham, 2019 U.S. Dist. LEXIS 205938, *14 (D. Mass. Nov. 27, 2019).

The Defendants did not act *ultra vires*.  Zotos v. Town of Hingham, 2016 U.S. Dist. LEXIS 195835 (D. Mass. 2016).

The signs were not fraudulent or negligent misrepresentations.  Zotos v. Town of Hingham, 2013 U.S. Dist. LEXIS 134123 (D. Mass. 2013).

The legal framework is stronger than the theoretical, the Defendants did not knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval when they certified compliance with "all legal requirements governing performance of this Contract" or "with all applicable state laws and regulations."

**C.     The Defendants Did Not Knowingly Make, Use Or Cause To Be Made Or Used A False Record Or Statement Material To A False Or Fraudulent Claim; Nor Did They.**

The Defendants did not knowingly make, use or cause to be made or used a false record or statement material to a false or fraudulent claim when they submitted Chapter 90 Reimbursement requests with the following affirmation:

> I/We under penalty of perjury that the forms as listed or summarized on the attached forms were examined; that they are in conformity with our existing wage schedule, equipment rates, and all applicable statutes and regulations; that they are properly chargeable to the appropriation(s) designated for this work; and that Executive Order No. 195, dated April 27, 1981 [and Chapter 11, Section 12 (2012)], is acknowledged as applicable.

(Compl. at ¶¶ 48-49; Joint Appendix at pp. 38-39).  Beyond the extensive history which requires we draw the contrary conclusion, Mr. Zotos simply does not allege that the Defendants submitted reimbursement requests knowing them to be materially false or fraudulent.  He attempts to infer through his claims that this is the case but that is not sufficient under the caselaw.  Claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides: "[A]ll averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004).  The allegations of knowingly submitting a false or fraudulent claim must be pled with particularity.  United States ex rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 14 (1st Cir. 2016).  It is not enough for Mr. Zotos to suggest by inference that the

27

FFCA or MFCA was violated because the speed signs were alleged posted unlawfully and one of the affirmations to an otherwise fully lawful Chapter 90 reimbursement request contained the above quoted phrase, particularly where all courts reviewing the matter have opined to the contrary.  Mr. Zotos was required to allege that the Defendants knowingly submitted a materially false or fraudulent claim for reimbursement which defrauded the state and federal government, something he has not and cannot allege in this case.  The work for which the Town Defendants submitted Chapter 90 Reimbursement Requests and were reimbursed was actually performed and completed.

## D.     Mr. Zotos' Claims Are Barred By The Statutes Of Limitation

A civil action under section 3730 [31 USCS § 3730] may not be brought more than six years after the date on which the violation of section 3729 [31 USCS § 3729] is committed.  31 U.S.C.S. § 3731; see also United States v. Rivera, 55 F.3d 703, 706 (1st Cir. 1995). To the extent that the Court were inclined to vacate the decision of the District Court, any alleged violation occurring prior to September 24, 2013 (six years prior to the filing of the instant Complaint), is barred by section 3730. Massachusetts applies the same six-year statute of limitation.  G.L. c. 12, § 5K.

Mr. Zotos' entire suit is premised upon unlawful posting of speed signs within the Town of Hingham.  He first made these claims in his letter to MassDOT

on July 9, 2012.  Certainly, to the extent that each of the current claims are premised upon the same core alleged violation of the law, they should be dismissed as time barred.  Otherwise, any Chapter 90 Reimbursement Request certified prior to September 24, 2013 (i.e. Compl. at ¶¶ 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62; Joint Appendix at 39-42) is time barred.

## CONCLUSION

For the foregoing reasons, Defendant-Appellees, Town of Hingham, Roger Fernandes individually and as former Town Engineer, Thomas Mayo individually and as Town Administrator, Ted Alexiades individually and as former Town Accountant/Finance Director and Town Administrator, Kevin Paicos individually and as former Town Administrator, and Susan Nickerson individually and as Town Accountant, respectfully ask the Court to affirm the District Court's dismissal of this case.

Respectfully submitted,

DEFENDANTS-APPELLEES,
TOWN OF HINGHAM,
MASSACHUSETTS, TOM MAYO,
and SUSAN NICKERSON

By their attorney:

  */s/ Kerry T. Ryan*
Kerry T. Ryan, Bar #121183
Bogle, DeAscentis & Coughlin, P.C.
25 Foster Street, 1st Floor
Quincy, MA 02169
Phone: 617-845-5473
Fax: 617-481-4277
ktr@b-dlaw.com

DEFENDANTS-APPELLEES,
ROGER FERNANDES, TED C.
ALEXIADES, and KEVIN PAICOS

By their attorney:

  */s/ Joseph A. Padolsky*
Douglas I. Louison, Bar #57265
dlouison@lccplaw.com
Joseph A. Padolsky, Bar #1153317
jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
10 Post Office Square, Suite 1330
Boston, MA  02109
(617) 439-0305

Dated:  January 3, 2024

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) excluding the parts of the document exempted by Fed. R. App. P. 32(f) because this document contains 7,625 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-face requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2016 in Times New Roman text at a 14-point font size.

January 3, 2024                         */s/ Joseph A. Padolsky*
Date                                    Joseph A. Padolsky, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this January 3, 2024**,** I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Frederic P. Zotos.

January 3, 2024                                   */s/ Joseph A. Padolsky*
Date                                                     Joseph A. Padolsky, Esq.